UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL MABEE, )<br>)<br>　Plaintiff, )<br>)<br>　　v. )<br>)<br>FEDERAL ENERGY REGULATORY )<br>COMMISSION, )<br>)<br>　Defendant. )<br>_____ ) | Civil Action No. 19-3448 (KBJ) |

**JOINT STATUS REPORT**

Pursuant to the Court's December 26, 2019 Minute Order, Plaintiff Michael Mabee ("Plaintiff") and Defendant Federal Energy Regulatory Commission ("FERC") submit the following Joint Status Report regarding Plaintiff's requests for records made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

**ITEMS ON WHICH THE PARTIES AGREE**

1. This matter involves three FOIA requests submitted to FERC by Plaintiff on or about December 18, 2018, January 12, 2019, and August 3, 2019, which were assigned the numbers FOIA FY19-19, FOIA FY19-30, and FOIA FY19-99, respectively.

2. Plaintiff's three FOIA requests seek the identities of the Unidentified Registered Entities ("URE") associated with 253 FERC Notice of Penalty ("NOP") dockets.

3. Plaintiff has clarified that, as to all three FOIA requests, he is seeking only the identities of the UREs with respect to each underlying public NOP docket—as opposed to any underlying non-public documents or information. Specifically, Plaintiff is seeking the public version of each NOP supplemented with the name of the URE and docket number associated with each public NOP.

4. The Parties agree that each public NOP is readily accessible on FERC's public "e-Library" database; however, the URE information being sought by Plaintiff is not available on the public NOP or otherwise available in FERC's public "e-Library."

5. The Parties agree that as of the date of this filing, FERC has processed 22 of the 253 dockets covered by these three FOIA requests. FERC has denied release of 13 "URE" names and has disclosed 9 "URE" names.

6. The Parties agree that all records released in this matter will be bates labeled by FERC.

7. The Parties agree that summary judgment briefing will be necessary following the completion of the processing of Plaintiff's requests.

8. The Parties wish to advise the Court that certain third-party organizations have expressed an interest in providing information and input in support of, or in opposition to, the disclosure of URE identities sought by Plaintiff via his FOIA requests.

9. The Parties propose that FERC file a monthly status report advising the Court of its processing of records and this report be filed on the 7th day of each month or, if the 7th day falls on a weekend or holiday, the next business day. The Parties further propose that every third month the status report will be a Joint Status Report filed by both parties so that a Joint Status Report is filed every quarter, beginning on March 7, 2020.

**DEFENDANT'S POSITION AND PROPOSED NEXT STEPS:**

10. FERC estimates that it will be able to process 5-10 dockets per month. This number is based on the fact that each docket that is the subject of Plaintiff's three FOIA requests requires multiple levels of FERC staff review and analysis, and each docketed matter is unique, with some dockets requiring significantly more review and analysis time than other dockets. Each FERC determination as to disclosure or release of a URE identity associated with a NOP requires FERC staff, including its cyber-security subject matter expert(s), to

engage in an in-depth analysis of multiple factors and materials.[1] Additionally, in certain instances, it will likely be necessary to inform and confer with UREs that were the subject of the NOPs concerning their position regarding potential release of their identities.

11. Given the extensive analysis and consultation that must take place, FERC is unable to provide a definitive estimate of how many dockets can be processed by it on a monthly basis and Plaintiff's request that the Court mandate processing of at least 25 dockets per month is wholly unreasonable and impractical.

12. Plaintiff asserts (in ¶ 24 below) that Defendant does not need to conduct a thorough analysis of each docket prior to making a release determination because the violations have been mitigated. As discussed below, Plaintiff's assertion is incorrect and release of information without conducting a thorough analysis of the dockets would result in unnecessary risks to the bulk electric system.

13. Regardless of mitigation, the disclosure of a URE identity, in conjunction with the information already provided in the public NOP, may provide bad actors with information that is useful in planning a cyberattack. By way of a single example, if an entity failed to use an appropriate access control model and failed to enable only those ports and services required for monitoring cyber assets in accordance with a specific CIP standard (e.g., CIP-005-3a), knowledge of this fact would be useful to a bad actor regardless of whether the

---

[1] The factors relevant to staff's determinations include, but are not limited to: the nature of the Critical Infrastructure Protection ("CIP") violation, including whether there is a Technical Feasibility Exception or "TFE" involved that does not allow the Unidentified Registered Entity ("URE") to fully meet the CIP requirements (*see* example offered in ¶¶ 13-14, *infra*); whether vendor-related information is contained in the NOP; whether mitigation is complete; the content of the public and non-public versions of the NOP; the extent to which the disclosure of the identity of the URE and other information would be useful to someone seeking to cause harm; whether a successful audit has occurred since the violation(s); whether the violation(s) was administrative or technical in nature; and the length of time that has elapsed since the filing of the public NOP.

violation has been mitigated or not. In this regard, the secure management of ports and services is one of the most fundamentally important security controls that must be achieved by a URE. If an attacker becomes aware that a particular URE is having difficulty managing ports and services, this would be useful in attempting to access the URE's system – regardless of whether a particular violation in a particular NOP has been mitigated – because additional information about the cyber system has been exposed.

14. By way of another example, there are certain cyber security compliance standards for which compliance is not possible from a technical perspective. In such instances, entities may seek a "Technical Feasibility Exception" or "TFE." Some of the public NOPs reveal the existence of TFEs in a URE's cyber security environment. Thus, even when the other violations set forth in such a NOP have been mitigated, the disclosure of the relevant URE identity in concert with the public NOP will inform bad actors of a TFE vulnerability associated with that particular URE's network.[2]

15. In short, Plaintiff's assertion that when violations have been mitigated, no review is necessary is overly simplistic and ignores the realities of the cyber threats faced by the bulk electric system from both state and non-state actors alike.[3]

16. FERC will issue determinations as to whether to release, or deny the release of, a URE(s) identity for 5-10 dockets per month on the 30th day of each month, beginning on January

---

[2] For example, TFEs are sought by UREs for certain "legacy devices" that do not have the capacity to meet current security standards. For example, some devices can only accept four-character passwords and cannot be enhanced. Unfortunately, four-character passwords are relatively easy to crack.

[3] *See, e.g.*, "The Cybersecurity 202: Get ready for serious cyberattacks from Iran, experts say," WashingtonPost.com, 2020 WLNR 1109700, January 13, 2020 https://www.washingtonpost.com/news/powerpost/paloma/the-cybersecurity-202/2020/01/13/the-cybersecurity-202-get-ready-for-serious-cyberattacks-from-iran-experts-say/5e1b7ef288e0fa2262dcbc70/.

30, 2020.  In the event the 30th falls on a weekend or holiday, the response will be issued the next business day.  As explained above, careful individual review is required, even for mitigated violations, to ensure the protection of the concerned energy infrastructure.  In processing 5-10 dockets per month, FERC is willing to prioritize any particular dockets identified by Plaintiff.

17.  Defendant's proposed Order is attached.

**PLAINTIFF'S POSITION AND PROPOSED NEXT STEPS:**

18.  On the date this JSR was due, Defendant inserted multiple arguments above "on the merits" of withholding the names of the regulatory violators which are subject to Plaintiff's FOIA requests. Defendant is attempting to confuse the Court on a very simple issue: Should the names of regulatory violators, under a regulatory scheme overseen by the government, be withheld from the public?

19.  Plaintiff notes that the publicly available Notices of Penalty (NOPs) do not contain details (such as IP addresses, names of equipment systems, etc.) which would aid an attacker. Plaintiff is *not* seeking any information that would aid an attacker. Plaintiff's FOIA requests simply seek the names of the regulatory violators associated with each already publicly available NOP docket – and nothing else.

20.  Plaintiff notes that the Federal Energy Regulatory Commission has been accepting and publishing in their "e-Library" the public version of the NOP on CIP violations since 2008. Apparently, none of the information in these publicly available NOPs have endangered the grid in FERC's view.  However, once Plaintiff began to file FOIA requests for the names of the regulatory violators, the regulated industry fought vehemently against this one piece of information – the names of their regulatory violators – being released. Why is this one

piece of information so sensitive to the industry? Because the name of a regulatory violator is the most essential piece of information to hold that utility accountable.

21. Plaintiff believes that time is of the essence as the cover up of the "URE" identities (which is the subject of Plaintiff's FOIA requests) has prevented media, public, Congressional and state regulatory scrutiny and accountability of both the industry's efforts to protect the critical infrastructures and FERC's regulatory performance. Rate payers have no way of knowing if the utility they pay (and depend upon) is a serial violator of Critical Infrastructure Protection ("CIP") standards. State Public Utility Commissions, Congress and other regulators have no way of knowing if the regulatory scheme is effective. Investors have no way of knowing if risk had been properly mitigated or at least disclosed. Most importantly, without disclosure and accountability, there is little incentive for companies to do even the minimum to meet CIP standards. The speedy resolution of these FOIA requests are critical to foster increased action by the electric industry and FERC to protect the electric grid.

22. Plaintiff also notes that some of these violations are many years old. The public has waited over a decade for some of the most delayed of the requested names of regulatory violators.

23. As of the date of this filing, FERC has averaged processing only 1.7 dockets per month for a total of 22 of the 253 dockets. At FERC's above proposed rate of "5-10 dockets per month" it will take FERC 46 additional months (3.8 additional years) to complete the processing. Plaintiff asserts that this is not a reasonable rate of production for a matter of such Congressional and public interest and matter so vital to fix a regulatory gap in our nation's security.

24. Plaintiff asserts that FERC does not have to engage in the complex review it describes in paragraphs 10-15 above. In 252 of the 253 dockets the public has been told that the violations were already mitigated and FERC has issued a final "no further review" letter – essentially closing the cases. Since all violations with the exception of one docket have been mitigated and the government has accepted the notice of penalty and closed the case, there is no need for FERC to conduct the exhaustive review described, and no valid FOIA exemption justifying that this information be withheld from the public any longer.

25. Plaintiff requests that the Court order FERC to process 25 dockets per month until the production is complete, which Plaintiff estimates to be approximately September 18, 2020, more than 640 days since Plaintiff's first request made on December 18, 2018.

26. Plaintiff's proposed Order is attached.

Dated: January 13, 2020                             Respectfully submitted,

 */s/ C. Peter Sorenson*                             JESSIE K. LIU
C. PETER SORENSON                                   D.C. Bar No. 472845
D.C. Bar No. 438089                                 United States Attorney
Sorenson Law Office
PO Box 10836                                        DANIEL F. VAN HORN
Eugene, OR 97440                                    D.C. Bar No. 924092
(541) 606-9173                                      Chief, Civil Division
petesorenson@gmail.com
                                                     */s/April Denise Seabrook*
*Counsel for Plaintiff*                             APRIL DENISE SEABROOK
                                                    D.C. Bar No. 993730
                                                    Assistant United States Attorney
                                                    555 4th Street, N.W.
                                                    Washington, D.C. 20530
                                                    (202) 252-2525
                                                    April.Seabrook@usdoj.gov

                                                    *Counsel for Defendant*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL MABEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 19-3448 (KBJ) |
| v. ) | |
| ) | |
| FEDERAL ENERGY REGULATORY ) | |
| COMMISSION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## [DEFENDANT'S PROPOSED] ORDER

In light of the parties' joint status report, it is hereby **ORDERED** that:

Defendant shall process a minimum of 5 dockets per month and shall issue a response to Plaintiff's FOIA requests on the 30th day of each month or the next business day if the 30th falls on a weekend or holiday until production is complete;

it is **FURTHER ORDERED** that Defendant shall file a monthly status report regarding the processing of Plaintiffs' FOIA requests on the 7th day of the month or the next business day, if the 7th day falls on a weekend or holiday, and that, beginning March 7, 2020, the Parties shall meet, confer, and file a Joint Status Report every third month.

_____          _____
Date                                                         KETANJI BROWN JACKSON
                                                                  United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL MABEE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 19-3448 (KBJ) ) ) |
| FEDERAL ENERGY REGULATORY COMMISSION, | ) ) ) |
| Defendant. | ) ) |

## [PLAINTIFF'S PROPOSED] ORDER

In light of the parties' joint status report, it is hereby **ORDERED** that:

Defendant shall process a minimum of 25 dockets per month and shall issue a response to Plaintiff's FOIA requests on the 30th day of each month or the next business day if the 30th falls on a weekend or holiday until production is complete;

it is FURTHER ORDERED that Defendant shall file a monthly status report regarding the processing of Plaintiffs' FOIA requests on the 7th day of the month or the next business day, if the 7th day falls on a weekend or holiday, and that, beginning March 7, 2020, the Parties shall meet, confer, and file a Joint Status Report every third month.

_____       _____
Date                                                          KETANJI BROWN JACKSON
                                                                      United States District Judge