UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL MABEE,<br><br>*Plaintiff,*<br><br>v.<br><br>FEDERAL ENERGY REGULATORY COMMISSION,<br><br>*Defendant.* | Civil Action No. 19-3448 (FYP) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

Defendant, Federal Energy Regulatory Commission ("FERC"), by and through undersigned counsel, respectfully submits the statement of material facts as to which there is no genuine dispute in support of its motion for summary judgment.

1. On July 20, 2006, NERC was certified by FERC pursuant to authority delegated under section 215 of the Federal Power Act as the nation's designated Electric Reliability Organization. 116 FERC ¶ 61,062.

2. NERC became responsible for, among other things, the development and enforcement of reliability standards designed to maintain the reliability of the United States' electric grid. *Id.*

3. Such reliability standards include requirements associated with ensuring the physical security of electric infrastructure as well as requirements associated with ensuring the integrity of electric cyber security infrastructure. *Id.*; Kuehnle Decl. ¶ 8.

4. The reliability standards at issue here—the Critical Infrastructure Protection Reliability Standards—address matters such as background checks for employees with access to

critical cyber assets, assuring that electric utilities and other industry stakeholders timely install security patches to protect software, and adequately training of electric utility staff on cyber security response measures. Kuehnle Decl. ¶ 8.

5. NERC, together with its six "Regional Entities" located throughout the United States and Canada, conducts audits and other assessments regarding electric utility companies' compliance with the Reliability Standards. *Id.* ¶ 9.

6. NERC and the Regional Entities may refer audit findings to their enforcement staff as potential violations of the Reliability Standards. *Id.* ¶ 10.

7. NERC files a "Notice of Penalty" with FERC. *Id.*; *see also* 16 U.S.C. § 824o(e)(2); 18 C.F.R. § 38.7(e).

8. Section 215(e)(2) of the Federal Power Act provides that a penalty submitted by NERC "may take effect no earlier than 31 days after NERC files with [FERC] [the] notice of penalty and record of the proceedings." 16 U.S.C. § 824o(e)(2); *see also* 18 C.F.R. § 38.7(e).

9. The Federal Power Act states that "[s]uch penalty shall be subject to review by [FERC], on its own motion or upon application by the user, owner or operator that is the subject of the penalty filed within 30 days after the date such notice is filed with [FERC]." *Id.*

10. NERC's typical practice has been to file the Notices of Penalty pertaining to violations of the Reliability Standards that involve grid operations (*e.g.*, vegetation management and balancing generation and load), as a public document without seeking a Critical Energy Infrastructure Information designation. Kuehnle Decl. ¶ 10.

11. For violations of the Reliability Standards that pertain to cyber security or physical security of the electric grid, NERC has requested that certain information be designated as Critical Energy Infrastructure Information. *Id.*

12. NERC's public version of a Critical Infrastructure Protection-related Notice of Penalty does not contain the names of the relevant Entities and contains less detail regarding violations in order to avoid the disclosure of information that would be useful to individuals targeting attacks directed at critical electric infrastructure. *Id.*

13. The non-public Notices of Penalties contain the names of Entities found to have violated the Reliability Standards as well as additional details regarding the nature of the relevant violations. *Id.*

14. FERC disclosed Entity identities associated with the 253 Notices of Penalty. *See* Production.

15. FERC withheld some entity identities, relying on Exemptions 3 and 7(F). 5 U.S.C. §§ 552(b)(3), (b)(7)(F). *Id.*

16. The energy grid's distribution systems "face significant cybersecurity risks—that is, threats, vulnerabilities, and impacts—and are increasingly vulnerable to cyberattacks." GAO-21-81 Electricity Grid Cybersecurity (March 2021).

17. "Threat actors are growing more adept at exploiting these vulnerabilities to execute cyberattacks." *Id.*

Dated: May 11, 2022                     Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        D.C. Bar No. 481052
                                        United States Attorney

                                        BRIAN P. HUDAK,
                                        Chief, Civil Division

*/s/ T Anthony Quinn*
T. ANTHONY QUINN
D.C. Bar No. 415213
Assistant United States Attorney
United States Attorney's Office
Civil Division
601 D Street, NW
Washington, D.C. 20530
202-252-7558
Tony.Quinn2@usdoj.gov

*Counsel for Defendant*

5