UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL MABEE,

      Plaintiff,

    v.

FEDERAL ENERGY REGULATORY
COMMISSION,

      Defendant.

Civil Action No. 19-3448 (ACR)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

By and through its undersigned counsel, Defendant, the Federal Energy Regulatory Commission ("FERC" or the "Agency"), respectfully submits this opposition to Plaintiff's cross-motion for summary judgement (ECF No. 58) and reply in support of the Agency's motion for summary judgment (ECF No. 56).

**PRELIMINARY STATEMENT**

Plaintiff Michael Mabee made Freedom of Information Act ("FOIA"), requests to FERC for documents revealing the identities of various Unidentified Registered Entities who received notices of penalty for violations of the Critical Infrastructure Protection standards from July 2010 through July 2019.  FERC withheld the identities of certain Unidentified Registered Entities pursuant to FOIA Exemptions 3 and 7(F).

Plaintiff challenges FERC's withholdings, arguing first that FERC misapplied FOIA Exemption 3 when it concluded that the identities of violators ("Entities") were Critical Energy/Electric Infrastructure Information ("CEII" or "Critical Information") pursuant to the Fixing America's Surface Transportation Act ("FAST Act"), 16 U.S.C. § 842o-1, and FERC's

regulations.  *See* Pl. Mem. in Opp'n (ECF No. 58-9) ("Pl. Opp'n") at 17-25.[1]  Plaintiff next argues that FERC misapplied FOIA Exemption 7(F) when it withheld the identities of the violators who had subsequently mitigated the violations.  *See* Pl. Opp'n at 25-43.

As discussed below and in Defendant's opening motion, the identities of the withheld Entities are Critical Information—and thus exempt from FOIA pursuant to FOIA Exemption 3—because the identities, in combination with other publicly available information about the Entities' vulnerabilities, could be useful to a person in planning an attack on critical infrastructure.  Thus, disclosure of the withheld Entities' identifications would reasonably pose a material risk to the bulk electric system.  In addition, the identities of the withheld Entities are information compiled for law enforcement purposes the disclosure of which reasonably could be expected to endanger the life or physical safety of any individual, and thus are exempt from disclosure pursuant to FOIA Exemption 7(F).  Nothing Plaintiff has offered in response refutes these points or shows that responding to Plaintiff's FOIA request warrants both contravening Congress' intent to protect the nation's critical infrastructure and inflicting on the American people the life-threatening risks that would accompany such disclosures of critical infrastructure vulnerabilities.  Accordingly, the Court should deny Plaintiff's motion for summary judgment and grant summary judgment in FERC's favor.

---

[1]     When citing to Plaintiff's Opposition, which also serves as Plaintiff's memorandum in support of his cross-motion, Defendant cites to the pagination generated by the Court's ECF system.

## ARGUMENT

### I.    FERC PROPERLY APPLIED FOIA EXEMPTION 3.

#### A.    FAST Act Section 215A is a Non-Disclosure Statue.

As explained in Defendant's motion, Congress specifically amended the Federal Power Act in 2015 to add section 215A, which authorizes FERC and the Secretary of the Department of Energy ("Energy Secretary") to designate information as Critical Information. *See* FAST Act, 16 U.S.C. § 824o-1.  Section 215A defines Critical Information as:

> [I]nformation related to critical electric infrastructure, or proposed critical electrical infrastructure, generated by or provided to the Commission or other Federal agency other than classified national security information, that is designated as critical electric infrastructure information by the Commission or the Secretary of the Department of Energy pursuant to subsection (d). Such term includes information that qualifies as critical energy infrastructure information under the Commission's regulations.

16 U.S.C. § 824o-1(a)(3). Moreover, in enacting the FAST Act, Congress directed that Critical Information "(A) shall be exempt from disclosure under section 552(b)(3) of title 5, United States Code [i.e., FOIA]; and (B) shall not be made available by any Federal, State, political subdivision or tribal authority pursuant to any Federal, State, political subdivision or tribal law requiring public disclosure of information or records." *Id.* § 824o-1(d)(1).  Thus, Congress foresaw the issue of public information requests such as Plaintiff's, and Congress already determined that such requests may not be honored.

As previously noted, Exemption 3 allows the withholding of information prohibited from disclosure by another statute if one of two disjunctive requirements are met: the statute either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  Further, for a statute enacted after 2009, as

Section 215A was, the statute must specifically cite to the FOIA to indicate Congress' intent that the statute would constitute a withholding statute.  *Id.* § 552(b)(3)(B).

Here, Section 215A specifically references 5 U.S.C. § 552(b)(3), so that requirement to constitute an Exemption 3 withholding statute is satisfied.  Further, Section 215A unequivocally mandates that Critical Information "is exempt from mandatory disclosure," providing the agency no discretion on the matter, thereby satisfying § 552(b)(3)(A)(i).  And, if there were any ambiguity, the statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld," § 552(b)(3)(A)(ii), including not only the Critical Information specifically defined in the statute, *see* 16 U.S.C. § 824o-1(a)(3), but also that which "qualifies as critical energy infrastructure information under the Commission's regulations," *id.*  Accordingly, it is no surprise that the D.C. Circuit emphatically has held that Critical Information "is exempt from disclosure under [FOIA] and is not to be 'made available by any Federal, State, political subdivision or tribal authority pursuant to any Federal, State, political subdivision or tribal law requiring public disclosure of information or records.'"  *Union of Concerned Scientists v. Dep't of Energy*, 998 F.3d 926, 927 (D.C. Cir. 2021) (quoting 16 U.S.C. § 824o-1(d)(1)); *accord Crooker v. ATF*, 670 F.2d 1051, 1074, n.61 (D.C. Cir. 1981) ("[i]t is not up to this court to balance the public interest in disclosure against any reason for avoiding disclosure"; "Congress has done the necessary balancing and enacted FOIA to represent the 'cross-currents' of concern.").  Thus, it is beyond dispute that Section 215A is an Exemption 3 withholding statute, and Congress already has determined that Critical Information must be withheld.

**B.**    <u>**FERC properly designated Entity Identities as Critical Information.**</u>

As previously noted, once an agency establishes that a statute is a nondisclosure statute and that it meets either of the disjunctive requirements of Exemption 3, an agency next must establish that the records in question fall within the withholding provision of the nondisclosure statute.

Plaintiff argues that FERC was wrong when it concluded that the identities of violators were Critical Information pursuant to the FAST Act, 16 U.S.C. § 842o-1, and FERC's regulations. *See* Pl. Opp'n at 17-23.    Plaintiff's argument is premised on the absence of an official, particularized designation of the names as Critical Information pursuant to 18 C.F.R. § 388.113(c)(1). *Id.* at 16.    Plaintiff's reading of the regulation is incomplete.    Specifically, 18 C.F.R. § 388.113(c) provides:

(c) Definitions. For purposes of this section:

(1) Critical electric infrastructure information means information related to critical electric infrastructure, or proposed critical electrical infrastructure, generated by or provided to the Commission or other Federal agency other than classified national security information, that is designated as critical electric infrastructure information by the Commission or the Secretary of the Department of Energy pursuant to section 215A(d) of the Federal Power Act. *Such term includes information that qualifies as critical energy infrastructure information under the Commission's regulations.* Critical Electric Infrastructure Information is exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. 552(b)(3) and shall not be made available by any Federal, State, political subdivision or tribal authority pursuant to any Federal, State, political subdivision or tribal law requiring public disclosure of information or records pursuant to section 215A(d)(1)(A) and (B) of the Federal Power Act.

18 C.F.R. § 388.113(c) (emphasis added).    Further, as noted, the statute itself likewise provides that Critical Information includes "information that qualifies as critical energy infrastructure information under the Commission's regulations."  16 U.S.C. § 824o–1(a)(3).

Pursuant to Congress' direction within the FAST Act, *see* 16 U.S.C § 824o-1(d)(2) (requiring the Commission to promulgate regulations for designating Critical Information), on

November 17, 2016, FERC issued Order No. 833, which amended the Agency's regulations at

18 C.F.R. §§ 375.309, 375.313, 388.112 and 388.113, to implement the FAST Act provisions that

pertain to the designation, protection and sharing of "Critical Electric Infrastructure," which

FERC, like Congress, defined as "a system or asset of the bulk-power system, whether physical or

virtual, the incapacity or destruction of which would negatively affect national security, economic

security, public health or safety, or any combination of such matters."  16 U.S.C. § 824o-1(a)(2);

18 C.F.R. § 388.113(c)(3).  In turn, FERC's regulations provide that:

> (2)    Critical energy infrastructure information means specific engineering,
> vulnerability, or detailed design information about proposed or existing critical
> infrastructure that:
>
>    (i)      Relates details about the production, generation, transportation,
>             transmission, or distribution of energy;
>    (ii)     Could be useful to a person in planning an attack on critical
>             infrastructure;
>    (iii)    Is exempt from mandatory disclosure under the Freedom of
>             Information Act, 5 U.S.C. 552; and
>    (iv)     Does not simply give the general location of the critical
>             infrastructure.

18 C.F.R. § 388.113(c)(2).  Pursuant to this regulation, information is Critical Information if it is

information that "could be useful to a person in planning an attack on critical infrastructure."

Here, plaintiff's FOIA requests sought the disclosure of the identities of approximately

1,500 Entities and their actual or potential non-compliance—i.e., "vulerabilit[ies]," 18 C.F.R.

§ 388.113(c)(2)—with cyber-security Critical Infrastructure Protection Reliability Standards that

pertain to cyber security or physical security of the nation's electric grid.  These Entities were

associated with over 253 Notices of Penalty public administrative proceedings identified by

separate FERC docket numbers.[2]  The public version of a Critical Infrastructure Protection-related Notice of Penalty does not contain the names of the relevant Entity and contains less detail regarding violations in order to avoid the disclosure of information that would be useful to individuals targeting attacks directed at critical electric infrastructure.  *See* Declaration of Barry W. Kuehnle, ECF No. 55-2 ("Kuehnle Decl.") ¶ 10.  The non-public Notices of Penalties contain the names of Entities found to have violated Critical Infrastructure Protection-related Reliability Standards as well as additional details regarding the nature of the relevant violation.  *Id.*

Thus, the disclosure of an Entity's identity, when combined with public information about the Entities' vulnerabilities set out in the publicly available Notices of Penalty, would be useful to those seeking to target the nation's electric grid.  Kuehnle Decl. ¶¶ 12, 17–18.[3]  As a result, the disclosure of the Entity identities, when combined with public information about the vulnerabilities of the Entities set forth in the publicly available Notices of Penalty, would be useful to those seeking to target the nation's electric grid.  This remains true even if the violation has been mitigated because even though mitigated, the type of violation shows the type of vulnerability afflicting a particular Entity, given the possibility that the same problem could recur for that Entity, or the mitigation might not be a complete fix, but rather the Entity might have been granted a

---

[2]    For ease of reference, the "Find, Fix, and Track Report," the Spreadsheet Notice of Penalty," and the "Notice of Penalty" are referred to collectively herein as a "Notice of Penalty." *See also* Kuehnle Decl. ¶ 7 n.1.

[3]    A violation of cyber security standards, even if mitigated, would create a risk of harm or detriment to life, physical safety, or security of the public because such violations directly bear on control room functions tied to electrical transmission, and thus linking specific knowledge of these cybersecurity violations to specific Entities would increase the risk to critical energy infrastructure under their control.  Kuehnle Decl. ¶ 17. In this regard, it is worth noting that, as asserted in Plaintiff's Complaint, he regularly posts materials received from FERC on his "blog," which is available to both concerned citizens and bad actors alike.  *See* Complaint, ECF No. 1, ¶¶ 3-14.

Technical Feasibility Exception that allows the Entity to avoid "fully meet[ing] the [Critical Infrastructure Protection] standards."  Kuehnle Decl. ¶ 14.[4]

Importantly, Plaintiff is not seeking only the identities of Entities, but rather, he is seeking identities of Entities that can be examined in concert with other details surrounding their violations set forth in each publicly available Notice of Penalty.  *Id.* ¶¶ 12, 17–18.  For this reason, FERC's analysis of whether disclosure of each Entity's name was appropriate involved an examination of information that is already publicly available within the public Notice of Penalty.  *Id.* ¶ 14.

FERC conducted a case-by-case assessment of the requested information included an analysis involved an examination of information that is already publicly available within the public Notice of Penalty.  *Id.* ¶ 14.  Additional factors considered by FERC included the following:

1.   the nature of the Critical Infrastructure Protection Reliability Standard violation, including whether there is a Technical Feasibility Exception involved that does not allow the Entity to fully meet the standards;
2.   whether vendor-related information is contained in the Notices of Penalty;
3.   whether mitigation is complete;
4.   the extent to which the disclosure of the identity of the Entity and other information would be useful to someone seeking to cause harm;
5.   whether a successful audit has occurred since the violation(s);
6.   whether the violation(s) was administrative or technical in nature; and
7.   the length of time that has elapsed since the filing of the public Notice of Penalty.

*See* Kuehnle Decl. ¶¶ 13-14, Ex. A.  Contrary to Plaintiff's claim (at 18) that these considerations depart from the FAST Act and the implementing regulations, the Kuehnle Declaration explains (at

---

[4]      Using Plaintiff's analogy of the locked gate, Pl. Br. at 26, knowing which person's gate had been left unlocked is useful because the gate-owner's carelessness may reasonably reoccur regardless of whether he re-locked the gate one time.  *See also* Pl. Br. at 34-35 (attempting to distinguish the records created to protect dams from terrorists at issue in *Living Rivers, Inc. v. Bureau of Reclamation*, 272 F. Supp. 1313 (D. Utah 2003), from the records created to protect the nation's electric grid from attack here).

¶¶ 12-14) how these factors actualize the statutory and regulatory requirements governing Critical Information for the specific context of the records at issue.

Plaintiff advances (Pl. Opp'n at 20) several criticisms of Defendant's designation of the withheld information as Critical Information.  But on examination none of those criticisms has merit.  At the threshold, the Critical Information pertains at a minimum to a "vulnerability"—that is, after all, why each Notice of Penalty was issued in the first place.  Second, the information does relate "details about the production, generation, transportation, transmission, or distribution of energy," namely the name of the entity producing, generating, transporting, transmitting, or distributing the energy.  Third, the information could aid "a person planning an attack on critical infrastructure" by readily enabling the identification of the Entity with a vulnerability.  Fourth, the information must be exempt under the FOIA, which, as noted above, Congress already has statutorily determined Critical Information is.  Plaintiff offers the unsupported *ipse dixit* that this determination of FOIA exemption must be antecedent to designation as Critical Information, but that gets things backwards:  Congress already has itself made the necessary determination that such information is exempt, given the "congressional appreciation of the dangers inherent in airing particular data."  *Am. Jewish Cong. v. Kreps*, 574 F.2d 624, 628-29 (D.C. Cir. 1978); *see also Wis. Proj. on Nuclear Arms Control v. Dep't of Com.*, 317 F.3d 275, 283 (D.C. Cir. 2003) ("[an] unduly strict reading of Exemption 3 strangles Congress's intent").  Finally, the Critical Information does not "simply give away the general location of the critical infrastructure," but rather it does much more, providing specific Entities' identities that, among other things, "would create a material risk to the bulk electric system" by detailing "certain information regarding the nature of the violation," whether mitigation is incomplete, whether an Entity will be unable "to fully meet the [Critical

Infrastructure Protection] standards," and the like.  *See* Kuehnle Decl. ¶¶ 12, 17.  Failure to protect

such information "could reasonably endanger the life or safety of others."  *Id.* ¶ 17.[5]

Thus, Plaintiff's implication that the identity of a vulnerable Entity can somehow be

separated from the vulnerability itself, which by law must be protected against disclosure, plainly

misapprehends both Congress' intent and FERC's regulations.  Plaintiff's misconstruction of the

withholding requirement, if correct, might require disclosure of particular computer code that has

been found susceptible to hacking just because neither the statute nor the FERC regulations include

the words "computer code."  But that is obviously incorrect, for such code is a "vulnerability" that

may inhibit "transmission" of electricity, with the accordant tragic effects that could lead to mass

suffering if society were deprived of electricity for an extended period by a malicious actor intent

on sowing chaos or harming the public.  *See id.* (describing risk of attack against electric grid akin

to the attack on the Colonial Pipeline and the threat such an attack would pose to "the safety of

millions of Americans").

Plaintiff's remaining arguments are no more persuasive.  For instance, even if, in

circumstances not involving Critical Information, FERC regulations provide that a Notice of

Penalty must be made public, *see* Pl. Opp'n at 23, here Congress has passed a statute to the

contrary, for which FERC in turn has enacted implementing regulations, and thus otherwise-

applicable disclosure regulations do not apply in this context where protecting the nation's electric

grid from potential attack is at issue.  And Plaintiff's speculation (Pl. Opp'n at 24) that FERC has

not properly considered whether vulnerabilities have been mitigated directly contradicts the

---

[5]     Plaintiff cites several decisions (Pl. Opp'n at 20-21) that predate the FAST Act.  None of those are relevant here, as they do not apply the specific language adopted in that Act or FERC's regulations implementing it, nor do they reflect the specific concerns that animated passage of the Act.

agency's sworn declaration, which specifically notes that certain vulnerabilities cannot be mitigated, and in any event the agency considered, among other factors, whether mitigation was complete.  Kuehnle Decl. ¶ 14; *see generally SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims . . .'").  Nor are Plaintiff's citations to general statements made in other contexts sufficient to overcome the agency's attestation to its labor intensive, Notice by Notice assessment of the Critical Information at issue that was performed for this request.  *See* Kuehnle Decl. ¶ 14-16 (noting that each withholding was an individualized decision, and, from 2018 through 2022, over 3,000 hours were spent analyzing and processing the records).

Accordingly, the withheld Entities' identities constitute Critical Information that is exempt from disclosure pursuant to FOIA Exemption 3.

## II.   FERC PROPERLY APPLIED FOIA EXEMPTION 7(F).

Not only are the Entities' identities Critical Information, they are also exempt from disclosure because the Entities' identities also constitute "law enforcement information," the disclosure of which could reasonably be expected to endanger the life or physical safety of any individual (those connected to the impacted portion of the power grid impaired by an attack).  Plaintiff does not contest that these "records or information [were] compiled for law enforcement purposes."  Plaintiff disputes only whether these documents could reasonably be expected to endanger the life or physical safety of any individual.  *See* Pl. Opp'n at 25-36.

For the same reasons set forth in the Kuehnle Declaration relating to classifying the Entities' identities as Critical Information—specific engineering, vulnerability, or detailed design information about proposed or existing critical infrastructure that could be useful to a person in planning an attack on critical infrastructure, *see* 18 C.F.R. § 388.113(c)(2)(ii)—the release and use

of these documents could reasonably be expected to endanger the life or physical safety of any individual.  Kuehnle Decl. ¶ 17.  In other words, knowledge about an Entity's cyber security vulnerability, even if mitigated, creates a very real target for those intent on hacking into the system.  Were the computers and networks comprising the industrial control system of an Entity hacked, it could leave the system inoperable.  *Id.*  Such a cyberattack of the electric grid system and the distribution of electricity undeniably could reasonably be expected to endanger the life and physical safety of those people whose power has been cut off.  *Id.*  Further, FERC's assessment of danger, in applying Exemption 7(F), should be accorded deference within limits.  *See Garcia v. Dep't of Just.*, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002) ("In evaluating the validity of an agency's invocation of Exemption 7(F), the court should within limits, defer to the agency's assessment of danger."); *see also  Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 130 (D.D.C. 2018) ("Therefore, [the agency] is not required to show that risks to human life and health from potential terrorist attacks outweigh the possibility that withholding the information might inhibit the development of best practices by the private sector.").  Thus, FERC's application of FOIA Exemption 7(F) is fully supported by the Kuehnle Declaration and is appropriate.

Plaintiff's arguments to the contrary rely on misdirection and erroneous reductions of the actual issues here, and thus fail.  Plaintiff ignores the need to analyze the records and withholdings as a whole, as FERC has spent thousands of hours doing, and instead uses oversimplifications and inapposite analogies to try and convince this Court to ignore FERC's well-reasoned declaration. This Court should decline that invitation.

*First*, Plaintiff insists at length (Pl. Opp'n at 26-36) that "releasing just the name of a utility" would not create a dangerous situation, but this is an oversimplification of the facts that grossly misstates the actual concerns.  While it may very well be true that releasing the names of

the Entities themselves, *in vacuo*, might not pose a threat, that is not what is at stake here; rather, as FERC has stated, the names of the Entities, taken in combination with the other information available regarding the specific dangers, mitigations, and other facts, would increase the risk of danger.  Plaintiff's reliance on the analogy of the locked gate (Pl. Opp'n at 26-27) is therefore inapposite: knowing whose gate was unlocked can increase the risk because the gate-owner's carelessness may reasonably reoccur, even after locking the gate again.

*Second*, Plaintiff's black and white analysis of mitigation (Pl. Opp'n at 29) is similarly overly simplistic and not a realistic assessment of the issues.  In an ideal world, it would no doubt be easy to state with finality that an Entity's mitigation of a particular violation removes forever any further vulnerabilities at that location, but that is not always possible.  Instead, common sense and FERC's own detailed analysis leads to the inescapable conclusion that a mitigation, even one that is fully complete and perfectly successful, is a band-aid over a wound, not an impenetrable piece of armor that forever prevents any further injury to the same location.  Similarly, Plaintiff's conflation of the mitigation rate with the risk of future danger (Pl. Opp'n at 31-32) oversimplifies the issues.  The fact that the Entities have mitigated the violations ninety-eight percent of the time does not provide any assurance or protection against a reoccurrence.

*Finally*, Plaintiff's insistence (Pl. Opp'n at 29) that the withholdings here are against the "spirit" of FOIA is irrelevant because the FAST Act explicitly protects this information from disclosure.  Congress certainly knows how to make information available, and it similarly knows how to make information outside the scope of FOIA.  Whatever the intent and spirit of FOIA may be, it must nevertheless comply with the plain meaning of statutory language, which clearly protects this information from disclosure.

### III.    FERC MET ITS BURDEN OF PROOF.

Plaintiff argues that FERC failed to present a *Vaughn* index and thus FERC failed to provide a sufficient description of the withheld or redacted documents and the bases for those withholdings.  Pl. Opp'n at 10-13.  Plaintiff's argument lacks merit because it elevates form over substance.  Under FOIA jurisprudence, the government need not always justify its withholdings via a *Vaughn* index or on a document-by-document basis and can, through reasonably detailed affidavits, meet its burden of proof by categorical showings.  *See Tax Analysts v. IRS*, 414 F. Supp. 2d 1, 4 (D.D.C. 2006) (collecting cases); *see also Gallant v. Nat'l Lab. Rels. Bd.*, 26 F.3d 168, 173 (D.C. Cir. 1994) (holding that "production of a *Vaughn* Index was not necessary given the adequacy of the government's affidavits.").  In other words, where the information before the Court is sufficient to understand and analyze the records produced and the information withheld, the actual format in which that information is provided is of no bearing.  *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (an agency may "submit other measures in combination with or in lieu of the index itself").  Instead, an agency's submissions will suffice "so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."  *Id*.

Here, the Kuehnle Declaration affords the Court fully adequate grounds to determine the appropriateness of the Critical Information designation and the law enforcement exemption.  A traditional *Vaughn* index would not illuminate the Court on the issues at hand—whether the Entities' identities are indeed Critical Information pursuant to statutory and regulatory provisions and whether disclosing the Entities' identities could reasonably be expected to endanger life or physical safety of any individual.  Because all records requested by plaintiff under FOIA fall under both FOIA Exemption 3 and 7(F), an index would be extremely repetitive, would provide no useful additional information beyond that contained in the detailed Kuehnle Declaration, and would

therefore serve no real purpose.  *See Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 128 (D.C. Cir. 1987) ("the materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege").  A *Vaughn* index will not assist the Court in determining whether the withheld information falls under the FAST Act or alternately is protected by the law enforcement exemption.

Further proof that there is no actual dispute between the parties on this point is seen in Plaintiff's own briefing, which demonstrates that Plaintiff clearly understands exactly what has been withheld as well as why, and accordingly spends the bulk of its verbiage contesting those withholdings.  *See* Pl. Opp'n at 17-43.  "[R]esort to a Vaughn index is futile" where, as here, the withholdings are categorical and not based on an individualized subject matter analysis.  *Public Investors Arbitration Bar Ass'n v. SEC*, 930 F. Supp. 2d 55, 70 (D.D.C. 2013) (quoting *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 152 (D.C. Cir. 1986)).  This Court should therefore ignore Plaintiff's form over substance argument, as it has no applicability to the actual dispute between the parties.

*     *     *

15

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's cross-motion for summary judgment and grant summary judgment in FERC's favor.

Dated: April 3, 2024
    Washington, DC                Respectfully submitted,

                                    MATTHEW M. GRAVES
                                    D.C. Bar No. #481052
                                    United States Attorney

                                    BRIAN P. HUDAK
                                    Chief, Civil Division

By:     _/s/ Kartik N. Venguswamy_
                                      KARTIK N. VENGUSWAMY
                                    D.C. Bar No. #983326
                                    Assistant United States Attorney
                                    601 D Street, NW
                                    Washington, D.C. 20530
                                    Tel: (202) 252-1790
                                    kartik.venguswamy@usdoj.gov

                                    _Attorneys for the United States of America_